## DAVIS v. FIDELITY MUT. LIFE INS. CO.
### No. 4512.

Circuit Court of Appeals, Fourth Circuit.
Nov. 6, 1939.

Francis O. Clarkson and Guy. T. Carswell, both of Charlotte, N. C., for appellant.

E. T. Cansler, Jr., of Charlotte, N. C. (Cansler & Cansler, of Charlotte, N. C., on the brief), for appellee.

Before PARKER, SOPER and NORTHCOTT, Circuit Judges.

NORTHCOTT, Circuit Judge.

This is an appeal from a judgment entered in April, 1939, in the District Court of the United States for the Western District of North Carolina at Charlotte, in an action in which the appellant, Kate J. Davis, was the plaintiff and the appellee, The Fidelity Mutual Life Insurance Company of Philadelphia, Pennsylvania, here referred to as the defendant, was the defendant. The plaintiff brought the action on an insurance policy issued by the defendant company on the life of her husband, Dr. Stephen W. Davis. After the taking of evidence the trial judge directed a verdict for the defendant and the plaintiff brought this appeal.

The insured made application to the defendant company for fifteen thousand dollars ($15,000) life insurance on January 23, 1936, and was examined by defendant's doctor on February 1, 1936. On February 5, 1936, the insured made an amendment to his application, applying for five thousand dollars ($5,000) insurance instead of fifteen thousand dollars ($15,000).

After some delay, on March 23, 1936, a policy for fifteen thousand dollars ($15,000) was tendered the insured, who refused it, stating that he only wanted a five thousand dollar ($5,000) policy. The defendant had wired its agent to release the insurance on March 10, 1936. When the insured requested the five thousand dollar ($5,000) policy he asked that the anniversary date of the policy be fixed on February 27th in order that he might have the benefit of a lower rate of insurance, his insurance age changing on March 1st. On March 23, 1936, when he rejected the fifteen thousand dollar ($15,000) policy, the insured paid six months' premium on the five thousand dollar ($5,000) policy, and the receipt given by the defendant's agent for this premium was dated on the day of the delivery of the policy, March 28, 1936, and stated that the amount received (eighty-one dollars and fifty-five cents ($81.55)) covered the period expiring August 27, 1936.

The policy for five thousand dollars ($5,000) delivered to the insured on March 28, 1936, for which he had paid one semi-annual premium on March 23d, and which he accepted, signing a receipt which stated that the policy was satisfactory to him, was dated March 27, 1936, contained the following clause: "Executed at the Head Office of the Company in Philadelphia, Pennsylvania, on the 27th day of March, 1936, which is the date of issue of this policy."

The policy also contained the following suicide clause: "Self-Destruction—In case of self-destruction within two years from date of issue of this policy, whether the insured be sane or insane, the insurance under this policy shall be a sum equal to the premiums hereon which have been paid to and received by the company and no more."

There was an endorsement on the policy, made by the defendant company, which read as follows: "Premiums will be payable, the loan provisions and the non-forfeiture provisions will be applied, and dividends will be apportioned as if this policy had been issued February 27, 1936."

The policy stated that the anniversary date was February 27th.

It is admitted that the insured came to his death by his own hand on March 16, 1938. The plaintiff was the beneficiary named in the policy. There is no dispute as to the facts.

The sole question involved is whether the insured killed himself within two years from the date of the issue of the policy.

 While it is well settled that "in case of ambiguity [in a life insurance policy], that construction is to be adopted which is most favorable to the insured," (Myers v. Ocean Accident & Guarantee Corp., 4 Cir., 99 F.2d 485, 489, and cases there cited) it is equally well settled that "courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made." Sellars v. Continental Life Ins. Co., 4 Cir., 30 F.2d 42, 45.

Here we find no ambiguity in the insurance contract. The policy expressly states that the 27th day of March, 1936, is the "date of issue," and while February 27, 1936, is fixed in the policy for certain purposes, this was done at the request of the insured and was for his benefit. These purposes are expressly stated and the earlier date was to be used as the anniversary date for the payment of premiums, loan provisions, non-feiture provisions and the apportionment of dividends. The suicide clause is not mentioned as one of the provisions as to which the date of February 27th was to be applied.

The contract of insurance provides that if the insured destroyed himself within two years from the "date of issue" the insurance should only be a sum equal to the premiums paid. Having contracted that the "date of issue" was March 27, 1936, the death of the insured by his own hand on March 16, 1938, brought into force this clause.

It is contended on behalf of the plaintiff that the fixing of February 27th as the anniversary date made that date the date of issue of the policy. We cannot agree with this contention. The authorities relied upon by the plaintiff deal with a different state of facts from those found here.

It is also contended that when the company wired its agent to release the fifteen thousand dollars ($15,000) insurance on March 10, 1936, the insurance became effective. This contention cannot be sustained. The five thousand dollar ($5,000) policy sued on had not been written at that time and certainly could not have become effective on March 10th, especially in view of the fact that no premium was paid until March 23d.

Insurance companies have a right to make a lawful contract and have that contract enforced. The insured, when he accepts the policy, is charged with the knowledge of its provisions.

Here there was no ambiguity in the contract as to the date of issue of the policy, or as to the suicide clause. The action of the learned trial judge in directing a verdict for the defendant was right.

Affirmed.