**AMERICAN NATIONAL INSURANCE COMPANY, Appellant,**

v.

**Joan M. MOTTA, Appellee.**

**No. 26050.**

United States Court of Appeals
Fifth Circuit.

Nov. 19, 1968.

Thomas C. MacDonald, Jr., Tampa, Fla., for appellant; Shackleford, Farrior, Stallings & Evans, Tampa, Fla., of counsel.

James J. Rowan, St. Petersburg, Fla., for appellee; McCutcheon, Fleece & Kennedy, St. Petersburg, Fla., of counsel.

Before BELL and MORGAN, Circuit Judges, and GUINN, District Judge.

LEWIS R. MORGAN, Circuit Judge:

This is a diversity case wherein the appellee, Joan M. Motta, filed suit in the Circuit Court of Pinellas County, Florida, seeking recovery as beneficiary on a policy of life insurance issued by the appellant, American National Insurance Company, on the life of her late husband, Paul R. Motta. The cause was thereafter removed to the United States District Court. The action was submitted to this Court on a stipulation of facts.

Briefly stated, the stipulated facts show that Joan Motta's deceased husband, Paul R. Motta, made an application with the insurance company for a twenty-year reducing term life insurance

policy for the face amount of $24,000.00. This transpired on April 20, 1964. On the same date, Paul R. Motta, the insured, paid the full first monthly premium on the policy applied for, and, in return, received from the insurance company's authorized agent, a conditional receipt. The conditional receipt after reciting the payment of the full first premium, provides as follows:

"The insurance for which application is made shall be effective (1) on the date of this receipt or (2) on the date of completion of all medical examinations required by the company rules and practices, whichever date is later, if on such effective date all persons to be insured are in good health and acceptable for insurance under established rules and practices of the company for the plan, amount and premium applied for."

It was agreed that Paul Motta completed all the medical examinations required by the insurance company on April 30, 1964, and that he was in good health at that time.

The Conditional receipt further provides:

"This receipt shall be binding from such effective date until the date on which the policy applied for becomes effective or until the effective date of short-term coverage, if any, whichever is earlier; it is subject to the terms of said policy, must bear the same date and serial number as the application, and be signed by a duly authorized representative of the Company."

On June 9, 1964, the insurance company issued its formal policy on the life of Paul Motta, said policy bearing a Policy Issue Date of June 9, 1964. The policy contained the following clauses under the heading of "Privileges and Provisions":

"3. EFFECTIVE DATE: This policy shall be effective on the Policy Issue Date upon payment of the full first premium and delivery of the policy during the lifetime and good health of the Insured."

"9. INCONTESTABILITY. This policy shall be incontestable after two years from the Policy Issue Date except for nonpayment of premiums."

"10. SUICIDE. Death of the Insured from suicide within two years from the Policy Issue Date, whether the Insured is sane or insane, shall limit the Company's liability to the return of the amounts of premiums paid."

The policy issued by the insurance company contained the application for insurance, said application being made part of the contract of insurance. One of the provisions of the application stated:

"(2) If the full first premium of the insurance applied for is paid in exchange for the conditional receipt bearing the same date and serial number as this application, the liability of the company shall be in accordance with the provisions of the conditional receipt;"

In addition, it was stipulated that the husband of Joan Motta committed suicide on May 9, 1966.

It was agreed that if the trial Court determined that the suicide clause commenced to run on April 30, 1964, Joan Motta would be entitled to recover the commuted value of the policy in the amount of $22,177.47. If the trial Court determined that the suicide clause commenced to run on June 9, 1964, then the liability of the defendant would be limited to the return of premiums. The trial Court entered summary judgment in favor of Joan Motta, ruling that the suicide clause commenced to run on April 30, 1964.

We are in accord with the finding of the trial judge that this policy is ambiguous as to its terms. The conditional receipt recites that it is "subject to the terms of the policy". However, no policy is in existence at that time. It is quite unclear as to what terms apply to the insured during the period between application and issuance of the policy. It is the unquestioned Florida law that if ambiguity exists in a

contract of insurance, the inconsistencies of such policy will be resolved in favor of the insured and against insurer. New York Life Insurance Company v. Jones, 224 F.2d 33 (5 Cir., 1955); Praetorians v. Fisher, Fla., 89 So.2d 329. We fully concur with the trial Judge that "taking together the application, conditional receipt, and policy with the references to one another and their various terms, there exists an ambiguity which must be decided in favor of the insured".

 In further discussion, we are concerned with the effect the Florida statutory law has on this issue. Section 627.0204, Florida Statutes, F.S.A., provides:

"There shall be a provision that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years from its date of issue, except for nonpayment of premiums and except, at the option of the insurer, as to provisions relative to benefits in event of disability and as to provisions which grant additional insurance specifically against death by accident or accidental means."

To allow the suicide clause to delay its operation until a month after the risk of loss has attached would be in effect an abrogation of this statute. The purpose of the statute would seem to forbid the extension of a contestable clause for a period greater than two years from the date of the attachment of the risk of loss. To decide that the suicide clause commenced at the date the formal policy was issued would have the effect of establishing two insurance contracts. One, under the conditional receipt, that ran from April 30, 1964, to June 9, 1964. The second, under the formal policy, extended from June 9, 1964, for the term of the policy. The first contract would not contain a suicide provision; the second contract would. Since neither party intended this two-contract arrangement, we adopt the interpretation that implements the spirit of the Florida statute as well as construes the several documents as one contract.

The cases of Byram v. Equitable Life Assurance Society of United States, 274 F.2d 822 (5 Cir., 1960) and Crowley v. Travelers Insurance Co., 196 F.2d 315 (5 Cir., 1952) [1] are distinguishable from the present case on the question of ambiguity. In the above cases, the Court determined no ambiguity was present in the insurance contract. The insurance contract involved herein is ambiguous.

The judgment is affirmed.

---

*1. Contra Schwartz v. Northern Life Insurance Co., 25 F.2d 555 (9 Cir., 1928),* cert. den. 278 U.S. 628, 49 S.Ct. 29, 73 L.Ed. 547.